UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

MINERVA INDUSTRIES, INC.,

                     *Plaintiff,*

      vs.

MOTOROLA, INC., ET AL.,

                  *Defendants.*

C.A. No. 2:07-CV-229 TJW

JURY TRIAL DEMANDED

### SECOND AMENDED ANSWER TO COMPLAINT

    In response to Plaintiff Minerva Industries, Inc.'s ("Minerva") Complaint filed
June 6, 2007, concerning U.S. Patent No. 6,681,120 ("'120 Patent") Defendant
UTStarcom, Inc. ("UTStarcom") answers as follows:

### Parties

    1.     UTStarcom lacks sufficient knowledge or information to form a belief as
to the truth of the allegations of paragraph 1 and therefore denies each and every
allegation contained therein.

    2.     UTStarcom lacks sufficient knowledge or information to form a belief as
to the truth of the allegations of paragraph 2 and therefore denies each and every
allegation contained therein.

    3.     UTStarcom lacks sufficient knowledge or information to form a belief as
to the truth of the allegations of paragraph 3 and therefore denies each and every
allegation contained therein.

    4.     UTStarcom lacks sufficient knowledge or information to form a belief as
to the truth of the allegations of paragraph 4 and therefore denies each and every
allegation contained therein.

Dockets.Justia.com

5.      UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 5 and therefore denies each and every allegation contained therein.

6.      UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 6 and therefore denies each and every allegation contained therein.

7.      UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 7 and therefore denies each and every allegation contained therein.

8.      UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 8 and therefore denies each and every allegation contained therein.

9.      UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 9 and therefore denies each and every allegation contained therein.

10.      UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 10 and therefore denies each and every allegation contained therein.

11.      UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 11 and therefore denies each and every allegation contained therein.

12.      UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 12 and therefore denies each and every allegation contained therein.

13.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 13 and therefore denies each and every allegation contained therein.

14.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 14 and therefore denies each and every allegation contained therein.

15.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 15 and therefore denies each and every allegation contained therein.

16.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 16 and therefore denies each and every allegation contained therein.

17.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 17 and therefore denies each and every allegation contained therein.

18.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 18 and therefore denies each and every allegation contained therein.

19.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 19 and therefore denies each and every allegation contained therein.

20.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 20 and therefore denies each and every allegation contained therein.

21.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 21 and therefore denies each and every allegation contained therein.

22.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 22 and therefore denies each and every allegation contained therein.

23.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 23 and therefore denies each and every allegation contained therein.

24.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 24 and therefore denies each and every allegation contained therein.

25.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 25 and therefore denies each and every allegation contained therein.

26.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 26 and therefore denies each and every allegation contained therein.

27.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 27 and therefore denies each and every allegation contained therein.

28.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 28 and therefore denies each and every allegation contained therein.

29.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 29 and therefore denies each and every allegation contained therein.

30.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 30 and therefore denies each and every allegation contained therein.

31.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 31 and therefore denies each and every allegation contained therein.

32.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 32 and therefore denies each and every allegation contained therein.

33.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 33 and therefore denies each and every allegation contained therein.

34.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 34 and therefore denies each and every allegation contained therein.

35.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 35 and therefore denies each and every allegation contained therein.

36.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 36 and therefore denies each and every allegation contained therein.

37.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 37 and therefore denies each and every allegation contained therein.

38.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 38 and therefore denies each and every allegation contained therein.

39.    Denied that UTStarcom is a California corporation; UTStarcom is incorporated in Delaware.  Admitted that UTStarcom's principal place of business is 1275 Harbor Bay Parkway, Alameda, California 94502.

40.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 40 and therefore denies each and every allegation contained therein.

41.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 41 and therefore denies each and every allegation contained therein.

42.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 42 and therefore denies each and every allegation contained therein.

43.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 43 and therefore denies each and every allegation contained therein.

44.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 44 and therefore denies each and every allegation contained therein.

**Jurisdiction and Venue**

45.    Admitted.

46.    The allegation that venue is proper in this district is a legal conclusion that does not require a response.  UTStarcom denies that it has a regular and established place of business in this Judicial District, denies that it has transacted business in this Judicial District, and denies that it has committed and/or induced any act of patent infringement in this Judicial District.  UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning other defendants in this action and therefore denies each and every one of the remaining allegations in paragraph 46.

47.    The allegation that Defendants are subject to this Court's specific and general personal jurisdiction is a legal conclusion that does not require a response.  UTStarcom admits that it derives substantial revenue from goods and services provided to individuals in Texas and in this Judicial District, but denies the remaining factual allegations concerning UTStarcom in paragraph 47.  UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning other defendants in this action and therefore denies each and every allegation concerning such parties.

**Count 1:  Infringement of U.S. Patent No. 6,681,120**

48.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 48 and therefore denies each and every allegation contained therein.

49.    Admitted that Ki Il Kim is listed as the inventor on the '120 Patent. UTStarcom lacks sufficient knowledge or information to form a belief as to the true inventor of the '120 Patent.

50.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 50 and therefore denies each and every allegation contained therein.

51.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 51 and therefore denies each and every allegation contained therein.

52.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 52 and therefore denies each and every allegation contained therein.

53.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 53 and therefore denies each and every allegation contained therein.

54.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 54 and therefore denies each and every allegation contained therein.

55.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 55 and therefore denies each and every allegation contained therein.

56.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 56 and therefore denies each and every allegation contained therein.

57.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 57 and therefore denies each and every allegation contained therein.

58.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 58 and therefore denies each and every allegation contained therein.

59.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 59 and therefore denies each and every allegation contained therein.

60.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 60 and therefore denies each and every allegation contained therein.

61.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 61 and therefore denies each and every allegation contained therein.

62.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 62 and therefore denies each and every allegation contained therein.

63.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 63 and therefore denies each and every allegation contained therein.

64.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 64 and therefore denies each and every allegation contained therein.

65.    UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 65 and therefore denies each and every allegation contained therein.

66.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 66 and therefore denies each and every allegation contained therein.

67.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 67 and therefore denies each and every allegation contained therein.

68.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 68 and therefore denies each and every allegation contained therein.

69.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 69 and therefore denies each and every allegation contained therein.

70.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 70 and therefore denies each and every allegation contained therein.

71.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 71 and therefore denies each and every allegation contained therein.

72.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 72 and therefore denies each and every allegation contained therein.

73.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 73 and therefore denies each and every allegation contained therein.

74.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 74 and therefore denies each and every allegation contained therein.

75.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 75 and therefore denies each and every allegation contained therein.

76.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 76 and therefore denies each and every allegation contained therein.

77.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 77 and therefore denies each and every allegation contained therein.

78.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 78 and therefore denies each and every allegation contained therein.

79.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 79 and therefore denies each and every allegation contained therein.

80.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 80 and therefore denies each and every allegation contained therein.

81.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 81 and therefore denies each and every allegation contained therein.

82.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 82 and therefore denies each and every allegation contained therein.

83.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 83 and therefore denies each and every allegation contained therein.

84.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 84 and therefore denies each and every allegation contained therein.

85.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 85 and therefore denies each and every allegation contained therein.

86.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 86 and therefore denies each and every allegation contained therein.

87.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 87 and therefore denies each and every allegation contained therein.

88.     Denied.

89.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 89 and therefore denies each and every allegation contained therein.

90.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 90 and therefore denies each and every allegation contained therein.

91.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 91 and therefore denies each and every allegation contained therein.

92.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 92 and therefore denies each and every allegation contained therein.

93.     UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 93 and therefore denies each and every allegation contained therein.

94.     Denied to the extent such allegations concern UTStarcom.  UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning other defendants in this action and therefore denies each and every allegation concerning such parties.

95.     Denied to the extent such allegations concern UTStarcom.  UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning other defendants in this action and therefore denies each and every allegation concerning such parties.

96.     Denied to the extent such allegations concern UTStarcom.  UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning other defendants in this action and therefore denies each and every allegation concerning such parties.

97.     Denied to the extent such allegations concern UTStarcom.  UTStarcom lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning other defendants in this action and therefore denies each and every allegation concerning such parties.

### Prayer for Relief

98.    UTStarcom denies that Minerva is entitled to the relief sought in the prayer or any relief whatsoever.

## AFFIRMATIVE DEFENSES

UTStarcom asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
## (Invalidity)

99.    One or more claims of the '120 Patent is invalid and/or unenforceable on the grounds that the purported invention claimed therein fails to meet the conditions of patentability specified in Title 35 of the United States Code, including, without limitation, Sections 41, 101, 102, 103, 112 and/or 287 of Title 35.

## SECOND AFFIRMATIVE DEFENSE
## (Estoppel)

100.    The actions taken and representations made before the United States Patent and Trademark Office in procuring the '120 Patent preclude Minerva from asserting or construing, whether literally or by the doctrine of equivalents, the claims of that patent in a way that would cover or read upon anything manufactured, used, sold, imported, or offered for sale by UTStarcom.

## THIRD AFFIRMATIVE DEFENSE
## (Lack of Notice, Marking)

101.    Upon information and belief, Minerva is not entitled to any damages for any period before Minerva's actual notice to UTStarcom of its infringement allegations by reason of the failure properly to mark products embodying the claims of the '120 Patent as required by 35 U.S.C. § 287.

**FOURTH AFFIRMATIVE DEFENSE**
**(Statute of Limitations)**

102.    To the extent Minerva seeks recovery for any alleged infringement committed more than six years prior to the filing of the complaint, such recovery is barred by 35 U.S.C. § 286.

**FIFTH AFFIRMATIVE DEFENSE**
**(Equitable Defenses)**

103.    Any claim for damages by Minerva is barred by the equitable doctrines of laches, waiver, unclean hands, equitable estoppel, implied license, inequitable conduct, or any other equitable doctrine.  Minerva's inequitable conduct includes at least the following:

104.    On April 25, 1997, Ki Il Kim, a United States citizen residing in Los Angeles, California and the named inventor of the '120 Patent, filed U.S. Patent Application Serial No. 08/846,108 ("the '108 Application") with the U.S. Patent and Trademark Office ("PTO").  The '120 Patent would eventually issue from a continuation-in-part application to the '108 Application.

105.    Prior to filing the '108 Application, however, Ki Il Kim previously filed two patent applications in the Republic of Korea on March 7, 1997 and March 26, 1997, respectively, which, as subsequently admitted by Ki Il Kim, contained material equivalent to that disclosed and claimed in the '108 Application.  Such foreign filings prior to the filing of the '108 Application constituted a violation of 35 U.S.C. § 184.

106.    According to 35 U.S.C. § 184, and as further delineated in 37 C.F.R. § 5.11, "[a] license from the [PTO] under 35 U.S.C. § 184 is required before filing any application for patent … in a foreign patent office or any foreign patent agency … if the invention was made in the United States and … [n]o application on the invention has been filed in the United States."  *See* 37 C.F.R. § 5.11(a).

107.     Moreover, pursuant to 35 U.S.C. § 185, "any person, and his successors, assigns, or legal representatives, shall not receive a United States patent for an invention if that person … shall, without procuring the license prescribed in section 184 of this title, have made … application in a foreign country for a patent … in respect of the invention. A United States patent issued to such person, his successors, assigns, or legal representatives shall be invalid, unless the failure to procure such license was through error and without deceptive intent … ."

108.     As Ki Il Kim had filed two patent applications in the Republic of Korea prior to filing the '108 Application (applications that Ki Il Kim admitted contained material equivalent to that disclosed and claimed in the '108 Application), Ki Il Kim filed with the PTO a "Petition Under 37 C.F.R. 5.25 For Retroactive License" and supporting "verified declaration" concurrently with the filing of the '108 Application.

109.     According to 37 C.F.R. § 5.25, "[a] petition for retroactive license under 35 U.S.C. § 184 … shall include … [a] verified statement (oath or declaration) containing ... [a]n explanation of why the material was filed abroad through error and without deceptive intent without the required license … first having been obtained."  *See* 37 C.F.R. § 5.25.

110.     In a "verified declaration" filed in support of his "Petition Under 37 C.F.R. § 5.25 For Retroactive License," Ki Il Kim declared, in relevant part, as follows:

> 3.  That I filed patent applications in the Republic of Korea on March 7 and March 26, 1997 containing material equivalent to that in th[is] United States patent application … .
>
> ***
>
> 5.  That I have diligently sought to obtain this license after I was informed by my attorney, Irving Keschner, that such a license was required;

6.  That I received such information when I sought Mr. Keschner's assistance in preparing the corresponding United States patent application on or about April 23, 1997;

7.  That I personally had traveled to Korea on or about March , 1997 [sic] to, inter alia, file the patent applications in the Korean patent office; that at the time of my travel to Korea I was unaware of the prohibitions of 35 U.S.C. 184;

8.  That since Mr. Keschner first informed me of the requirement that a petition for a retroactive license must be filed, I have authorized him to take the necessary steps to prepare the petition and submit it concurrently with the filing of the United States patent application.

111.    Ki Il Kim concluded this "verified declaration" by stating that that "these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

112.    Subsequently, on March 20, 2000, while the '108 Application was still pending with the PTO, Ki Il Kim filed U.S. Patent Application Serial No. 09/531,356 ("the '356 Application").  The '356 Application was filed as a continuation-in-part Application to the '108 Application.  The '356 Application would eventually issue as the '120 Patent, the patent-in-suit.

113.    Prior to filing the '356 Application, however, Ki Il Kim once again filed two patent applications in the Republic of Korea on October 15, 1999 and December 17, 1999, respectively, which, as subsequently admitted by Ki Il Kim, contained material equivalent to that disclosed and claimed in the '356 Application.  As with the foreign applications filed prior to the '108 Application, the foreign applications filed prior to the filing of the '356 Application constituted a violation of 35 U.S.C. § 184.

114.    As during the prosecution of the '108 Application, Ki Il Kim again filed a "Petition Under 37 C.F.R. 5.25 For Retroactive License" and a supporting "verified declaration" concurrently with the filing of the '356 Application.

115.    In the "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," Ki Il Kim declared, in relevant part, as follows:

> 3.  That I filed patent applications in the Republic of Korea on October 15, 1999 … and on December 17, 1999 … containing material equivalent to material that is disclosed in this United States patent application;"
>
> ***
>
> 5.  That I have diligently sought to obtain this license after being informed that such a license was required in connection with this U.S. patent application; and
>
> 6.  That I periodically travel to Korea and communicate by telephone from the United States to Korea in connection with my business of designing and developing consumer products that can be manufactured in Korea for sale in the United States and elsewhere and, in that connection in the Fall of 1999 I had telephone conversations with Mr. Cho of Now Precision Company concerning development of the product that is the subject matter of this U.S. patent application and that I became concerned that my proprietary information concerning the subject matter of this U.S. patent application might be revealed to others who, with or without Mr. Cho, might file one or more patent applications in Korea claiming the subject matter of this U.S. patent application as being their invention. Since Korea awards patents in the case of a conflict between separate applications to the application that was filed first, I filed the two Korean patent applications to protect my rights in Korea without knowing that my rights to a patent in the United States might be jeopardized by such filings.

116.    As before, Ki Il Kim concluded this "verified declaration" by stating that that "these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

117.    As outlined above, Ki Il Kim's "verified declaration" submitted to the PTO during the prosecution of the '356 Application stating that "I filed the two Korean patent applications to protect my rights in Korea without knowing that my rights to a patent in the United States might be jeopardized by such filings," constituted an affirmative misrepresentation to the PTO.

118.    Ki Il Kim was admittedly informed just three years earlier during the prosecution of the '108 Application "of the prohibitions of 35 U.S.C. 184."

119.    As such, based on information and belief, Ki Il Kim was aware that "[a] license from the [PTO] under 35 U.S.C. § 184 is required before filing any application for patent … in a foreign patent office or any foreign patent agency … if the invention was made in the United States and … [n]o application on the invention has been filed in the United States."  *See* 37 C.F.R. § 5.11(a).

120.    Ki Il Kim's affirmative misrepresentation was of a material fact, as "any person, … shall not receive a United States patent for an invention if that person … shall, without procuring the license prescribed in section 184 of this title, have made … application in a foreign country for a patent … in respect of the invention.  A United States patent issued to such person … shall be invalid … ."  *See* 35 U.S.C. § 185(a).  As such, Ki Il Kim's affirmative misrepresentation was directly related to the patentability of the '356 Application (and ultimately, the '120 Patent).  Without Ki Il Kim's affirmative misrepresentation, the '365 Application would not have issued as a United States patent.

121.    Moreover, Ki Il Kim's affirmative misrepresentation of a material fact was made with an intent to deceive the PTO.  Ki Il Kim (and/or his attorney) was aware that "[a] petition for retroactive license under 35 U.S.C. § 184 … shall include … [a] verified statement (oath or declaration) containing: … [a]n explanation of why the material was

filed abroad through error and without deceptive intent without the required license …
first having been obtained."  *See* 37 C.F.R. § 5.25.

122.    Accordingly, Ki Il Kim's "verified declaration" stating that "I filed the
two Korean patent applications … without knowing that my rights to a patent in the
United States might be jeopardized by such filings," when Ki Il Kim was admittedly
informed just three years earlier during the prosecution of the '108 Application "of the
prohibitions of 35 U.S.C. 184," and when Ki Il Kim was aware that the '365 Application
would not issue as a United States patent without an "explanation of … error," shows that
Ki Il Kim intended to deceive the PTO into accepting his "Petition Under 37 C.F.R. 5.25
For Retroactive License," and thereafter allowing the '120 Patent.

123.    Thus, Ki Il Kim, the named inventor of the '120 Patent, made an
affirmative misrepresentation of material fact with an intent to deceive the PTO during
the prosecution of the application that would eventually issue as the '120 Patent.  As
such, Ki Il Kim committed inequitable conduct, and the '120 Patent is therefore
unenforceable.

124.    UTStarcom has no obligation with respect to any claim alleged in the
Complaint to the extent that such claim is barred by the equitable doctrines of laches,
waiver, unclean hands, equitable estoppel, implied license, inequitable conduct, or any
other equitable doctrine.

### GENERAL ALLEGATIONS

125.    UTStarcom specifically reserves the right to assert any and all affirmative
defenses that may become available through information developed in discovery, at trial
or otherwise.

126.    On information and belief, this is an exceptional case as that term is used
in 35 U.S.C. § 285 in that Minerva failed to perform a reasonable investigation of

UTStarcom's alleged infringement before filing this action and committed inequitable conduct in the prosecution of the '120 Patent.

**WHEREFORE**, UTStarcom respectfully requests that the Court:

A.    dismiss the Complaint with prejudice;

B.    enter an order declaring that UTStarcom has not infringed and is not currently infringing, either directly, contributorily, or through inducement, any asserted valid and enforceable claim of the '120 Patent;

C.    award UTStarcom its attorneys' fees, because this case is exceptional within the provisions of 35 U.S.C. § 285;

D.    award UTStarcom its costs; and award UTStarcom such other relief as the Court deems just and proper.

## COUNTERCLAIMS

1.    This is an action under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, for a declaration pursuant to the patent laws of the United States, 35 U.S.C. § 1 *et. seq.*, that the '120 Patent is not infringed by UTStarcom or are invalid or both.

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), and 1338(a) (action arising under an Act of Congress relating to patents).

3.    This Court has personal jurisdiction over Minerva by virtue of Minerva having brought this lawsuit in this forum.

4.    The filing of Minerva's complaint creates an actual controversy between Minerva and UTStarcom regarding the infringement and validity of the Patents-in-Suit.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief as to the '120 Patent)

5.      The '120 Patent, properly construed, is not valid, not enforceable, and/or not infringed by any UTStarcom products or actions.

6.      Minerva's allegations of infringement of the '120 Patent are barred because of at least the following inequitable conduct:

7.      On April 25, 1997, Ki Il Kim, a United States citizen residing in Los Angeles, California and the named inventor of the '120 Patent, filed U.S. Patent Application Serial No. 08/846,108 ("the '108 Application") with the U.S. Patent and Trademark Office ("PTO"). The '120 Patent would eventually issue from a continuation-in-part application to the '108 Application.

8.      Prior to filing the '108 Application, however, Ki Il Kim previously filed two patent applications in the Republic of Korea on March 7, 1997 and March 26, 1997, respectively, which, as subsequently admitted by Ki Il Kim, contained material equivalent to that disclosed and claimed in the '108 Application. Such foreign filings prior to the filing of the '108 Application constituted a violation of 35 U.S.C. § 184.

9.      According to 35 U.S.C. § 184, and as further delineated in 37 C.F.R. § 5.11, "[a] license from the [PTO] under 35 U.S.C. § 184 is required before filing any application for patent … in a foreign patent office or any foreign patent agency … if the invention was made in the United States and … [n]o application on the invention has been filed in the United States." *See* 37 C.F.R. § 5.11(a).

10.     Moreover, pursuant to 35 U.S.C. § 185, "any person, and his successors, assigns, or legal representatives, shall not receive a United States patent for an invention if that person … shall, without procuring the license prescribed in section 184 of this title, have made … application in a foreign country for a patent … in respect of the invention. A United States patent issued to such person, his successors, assigns, or legal

representatives shall be invalid, unless the failure to procure such license was through error and without deceptive intent … ."

11.     As Ki Il Kim had filed two patent applications in the Republic of Korea prior to filing the '108 Application (applications that Ki Il Kim admitted contained material equivalent to that disclosed and claimed in the '108 Application), Ki Il Kim filed with the PTO a "Petition Under 37 C.F.R. 5.25 For Retroactive License" and supporting "verified declaration" concurrently with the filing of the '108 Application.

12.     According to 37 C.F.R. § 5.25, "[a] petition for retroactive license under 35 U.S.C. § 184 … shall include … [a] verified statement (oath or declaration) containing ... [a]n explanation of why the material was filed abroad through error and without deceptive intent without the required license … first having been obtained."  See 37 C.F.R. § 5.25.

13.     In a "verified declaration" filed in support of his "Petition Under 37 C.F.R. § 5.25 For Retroactive License," Ki Il Kim declared, in relevant part, as follows:

> 3.  That I filed patent applications in the Republic of Korea on March 7 and March 26, 1997 containing material equivalent to that in th[is] United States patent application … .
>
> ***
>
> 5.  That I have diligently sought to obtain this license after I was informed by my attorney, Irving Keschner, that such a license was required;
>
> 6.  That I received such information when I sought Mr. Keschner's assistance in preparing the corresponding United States patent application on or about April 23, 1997;
>
> 7.  That I personally had traveled to Korea on or about March , 1997 [sic] to, inter alia, file the patent applications in the Korean patent office; that at the time of my travel to Korea I was unaware of the prohibitions of 35 U.S.C. 184;
>
> 8.  That since Mr. Keschner first informed me of the requirement that a petition for a retroactive license must be

> filed, I have authorized him to take the necessary steps to
> prepare the petition and submit it concurrently with the
> filing of the United States patent application.

14.     Ki Il Kim concluded this "verified declaration" by stating that that "these

statements were made with the knowledge that willful false statements and the like so

made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of

the United States Code and that such willful false statements may jeopardize the validity

of the application or any patent issuing thereon."

15.     Subsequently, on March 20, 2000, while the '108 Application was still

pending with the PTO, Ki Il Kim filed U.S. Patent Application Serial No. 09/531,356

("the '356 Application"). The '356 Application was filed as a continuation-in-part

Application to the '108 Application. The '356 Application would eventually issue as the

'120 Patent, the patent-in-suit.

16.     Prior to filing the '356 Application, however, Ki Il Kim once again filed

two patent applications in the Republic of Korea on October 15, 1999 and December 17,

1999, respectively, which, as subsequently admitted by Ki Il Kim, contained material

equivalent to that disclosed and claimed in the '356 Application. As with the foreign

applications filed prior to the '108 Application, the foreign applications filed prior to the

filing of the '356 Application constituted a violation of 35 U.S.C. § 184.

17.     As during the prosecution of the '108 Application, Ki Il Kim again filed a

"Petition Under 37 C.F.R. 5.25 For Retroactive License" and a supporting "verified

declaration" concurrently with the filing of the '356 Application.

18.     In the "verified declaration" filed in support of his "Petition Under 37

C.F.R. 5.25 For Retroactive License," Ki Il Kim declared, in relevant part, as follows:

> 3. That I filed patent applications in the Republic of Korea
> on October 15, 1999 … and on December 17, 1999 …
> containing material equivalent to material that is disclosed
> in this United States patent application;"

\*\*\*

5.  That I have diligently sought to obtain this license after being informed that such a license was required in connection with this U.S. patent application; and

6.  That I periodically travel to Korea and communicate by telephone from the United States to Korea in connection with my business of designing and developing consumer products that can be manufactured in Korea for sale in the United States and elsewhere and, in that connection in the Fall of 1999 I had telephone conversations with Mr. Cho of Now Precision Company concerning development of the product that is the subject matter of this U.S. patent application and that I became concerned that my proprietary information concerning the subject matter of this U.S. patent application might be revealed to others who, with or without Mr. Cho, might file one or more patent applications in Korea claiming the subject matter of this U.S. patent application as being their invention. Since Korea awards patents in the case of a conflict between separate applications to the application that was filed first, I filed the two Korean patent applications to protect my rights in Korea without knowing that my rights to a patent in the United States might be jeopardized by such filings.

19.     As before, Ki Il Kim concluded this "verified declaration" by stating that that "these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

20.     As outlined above, Ki Il Kim's "verified declaration" submitted to the PTO during the prosecution of the '356 Application stating that "I filed the two Korean patent applications to protect my rights in Korea without knowing that my rights to a patent in the United States might be jeopardized by such filings," constituted an affirmative misrepresentation to the PTO.

21.     Ki Il Kim was admittedly informed just three years earlier during the prosecution of the '108 Application "of the prohibitions of 35 U.S.C. 184."

22.    As such, based on information and belief, Ki Il Kim was aware that "[a]

license from the [PTO] under 35 U.S.C. § 184 is required before filing any application for

patent … in a foreign patent office or any foreign patent agency … if the invention was

made in the United States and … [n]o application on the invention has been filed in the

United States."  *See* 37 C.F.R. § 5.11(a).

23.    Ki Il Kim's affirmative misrepresentation was of a material fact, as "any

person, … shall not receive a United States patent for an invention if that person … shall,

without procuring the license prescribed in section 184 of this title, have made …

application in a foreign country for a patent … in respect of the invention.  A United

States patent issued to such person … shall be invalid … ."  *See* 35 U.S.C. § 185(a).  As

such, Ki Il Kim's affirmative misrepresentation was directly related to the patentability of

the '356 Application (and ultimately, the '120 Patent).  Without Ki Il Kim's affirmative

misrepresentation, the '365 Application would not have issued as a United States patent.

24.    Moreover, Ki Il Kim's affirmative misrepresentation of a material fact was

made with an intent to deceive the PTO.  Ki Il Kim (and/or his attorney) was aware that

"[a] petition for retroactive license under 35 U.S.C. § 184 … shall include … [a] verified

statement (oath or declaration) containing: … [a]n explanation of why the material was

filed abroad through error and without deceptive intent without the required license …

first having been obtained."  *See* 37 C.F.R. § 5.25.

25.    Accordingly, Ki Il Kim's "verified declaration" stating that "I filed the

two Korean patent applications … without knowing that my rights to a patent in the

United States might be jeopardized by such filings," when Ki Il Kim was admittedly

informed just three years earlier during the prosecution of the '108 Application "of the

prohibitions of 35 U.S.C. 184," and when Ki Il Kim was aware that the '365 Application

would not issue as a United States patent without an "explanation of … error," shows that

Ki Il Kim intended to deceive the PTO into accepting his "Petition Under 37 C.F.R. 5.25 For Retroactive License," and thereafter allowing the '120 Patent.

26.     Thus, Ki Il Kim, the named inventor of the '120 Patent, made an affirmative misrepresentation of material fact with an intent to deceive the PTO during the prosecution of the application that would eventually issue as the '120 Patent.  As such, Ki Il Kim committed inequitable conduct, and the '120 Patent is therefore unenforceable.

**PRAYER FOR RELIEF**

**WHEREFORE**, UTStarcom prays for relief against Minerva as follows:

A.      For a declaration that the '120 Patent, properly construed, is not valid, not enforceable, and/or not infringed by any UTStarcom products or actions;

B.      For a declaration that Minerva and each of its officers, employees, agents, alter egos, attorneys, and any persons in active concert or participation with it be restrained and enjoined from further prosecuting or instituting any action against UTStarcom claiming that the '120 Patent is valid, enforceable, or infringed, or from representing that UTStarcom's products or services, or the use of them, infringes the '120 Patent.

C.      For a declaration that this is an exceptional case under 35 U.S.C. § 285 and for an award to UTStarcom of its attorneys' fees and expenses in this action; and

D.      For such other relief as the Court may deem just and proper.

## JURY DEMAND

27.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, UTStarcom

hereby demands a trial by jury of all issues in this case.


Dated:  March 4, 2008                    Respectfully submitted,

                                         MORRISON & FOERSTER, LLP

                                         By:     /s/ Alison M. Tucher

                                         Harold J. McElhinny
                                         Alison M. Tucher
                                         David E. Melaugh
                                         MORRISON & FOERSTER LLP
                                         425 Market Street
                                         San Francisco, California  94105-2482
                                         Phone:  415.268.7000
                                         Fax:  415.268.7522

                                         and

                                         GILLAM & SMITH, LLP

                                         Melissa R. Smith
                                         State Bar No. 24001 35 1
                                         Harry L. Gillam, Jr.
                                         State Bar No. 0792 1800
                                         GILLAM & SMITH, L.L.P.
                                         303 South Washington Avenue
                                         Marshall, TX 75670
                                         Telephone: (903) 934-8450
                                         Facsimile: (903) 934-9257

                                         ATTORNEYS FOR DEFENDANT
                                         UTSTARCOM, INC.